```
         CCPCVMN          SUPREME COURT  STATE OF NEW YORK   DATE: 05/22/2007
INDEX NO: 105250 2007  OFFICE OF THE COUNTY CLERK - NEW YORK  TIME: 10:56:00
PURCHASE: 04182007         CIVIL INDEX MINUTE BOOK INQUIRY

PLAINTIFF NAME: GOODMAN LAWRENCE        DEFENDANT NAME: MERCK & CO INC
        ATTORNEY: DINKES & SCHWITZER          ATTORNEY: UNKNOWN
                  112 MADISON AVENUE
                  NEW YORK, NEW YORK
                  1-212 683-3800
SEQ  DATE                   MINUTES
0001 04182007               SUMMONS AND VERIFIED COMPLAINT


0001 04232007               AFFIDAVIT OF SERVICE


0001 05022007               NOTICE OF REMOVAL




                                  NEXT INDEX NUMBER:          /
  F2=PRINT  F3=EXIT  F5=VIEW NEXT  F7=BACKWARD  F8=FORWARD  F12=EXIT MAIN
```

46-3004R-100M92

## COUNTY CLERK, NEW YORK COUNTY

Application for INDEX NUMBER pursuant to Section 8018, C.P.L.R.

### FEE $210.00

**INDEX NUMBER**

Do not write in this space

Space below to be TYPED or PRINTED by applicant

**TITLE OF ACTION OR PROCEEDING**

Lawrence Goodman

LV:

merck and Co, Inc

**CHECK ONE**

| | |
|---|---|
| ☐ COMMERCIAL ACTION | ☒ NOT COMMERCIAL ACTION |
| ☐ CONSUMER CREDIT TRANSACTION | ☐ NOT CONSUMER CREDIT TRANSACTION |
| ☐ THIRD PARTY ACTION | ☐ NOT THIRD PARTY ACTION |

**IF THIRD PARTY ACTION MAIN INDEX NO.**

Ross + Schwitzer

Name and address of attorney for Plaintiff / Petitioner    119 madison ave
Telephone No.    new york ny 10016

Name and address of attorney for Defendant / Respondent
Telephone No.

Nature and object of action or
Nature of special proceeding

B.    Application for Index Number filed by:    Plaintiff ☒    Defendant ☐

C.    Was a previous Third Party Action filed    Yes ☐    No ☒

SUPREME COURT OF THE STATE OF NEW YORK    INDEX #:
COUNTY OF NEW YORK                        DATE PURCHASED:
= = = = = = = = = = = = = = = = = = =X                        0 7 1 0 5 2 5 0
LAWRENCE GOODMAN                          SUMMONS

            Plaintiff,

                                         Plaintiff designates
                                         New York County as
                                         place of trial

      -against-

                                         The basis of the
                                         venue is:

MERCK & CO., INC.,                       Defendant's place of
                                         Business

                        Defendant.
= = = = = = = = = = = = = = = = = = =X
To the above named defendant(s):

    YOU ARE HEREBY SUMMONED to answer the complaint in this
action and to serve a copy of your answer, or, if the
complaint is not served with this summons, to serve a notice
of appearance on the Plaintiff's Attorneys within 20 days
after the service of this summons exclusive of the day of
service (or within 30 days after the service is complete if
this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the
relief demanded herein.

Dated: New York, New York
April 17, 2007

                        DINKES & SCHWITZER, ESQS.

                        _____
                        BY: WILLIAM HAMEL, ESQ.
                        Attorneys for Plaintiff
                        112 Madison Avenue
                        New York City, N.Y. 10016
                        (212) 683-3800

Defendant:

Merck & Co., Inc.
c/o CT Corporation
111 8th Avenue
New York, NY 10011

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

07105250

================================================X

LAWRENCE GOODMAN,                                INDEX NO.:

                          Plaintiff,             VERIFIED
                                                 COMPLAINT
            -against-

MERCK & CO., INC.,                               *FILED*
                                                 APR 18 2007
                          Defendant.             NEW YORK
                                                 COUNTY CLERKS CO.
================================================X

## I. INTRODUCTION

1.      The Plaintiff, LAWRENCE GOODMAN, brings this civil action for damages arising from his ingestion of the non-steroidal anti-inflammatory drug VIOXX ("VIOXX"), manufactured and distributed by Defendant MERCK & CO., INC. ("MERCK").

2.      On or about April 2004, and August 2004, and December 7, 2004, and thereafter, as a result of the ingestion of VIOXX, LAWRENCE GOODMAN, developed serious and permanent injuries, including cardiac injury, cerebral injury, cardiac dysfunction, and other cardiovascular injuries, organ impairment, damage, and pain and suffering.

3.      VIOXX has been linked to an increased risk of cardiac arrest and stroke in patients taking the medication. On September 27, 2004, Defendant MERCK, the manufacturer of VIOXX, disclosed to the United States Food & Drug Administration ("FDA") that the Data Safety Monitoring Board for an ongoing efficacy study of VIOXX had recommended the study be halted for safety reasons. The study demonstrated an increased risk of cardiovascular events, including heart attack and stroke, in patients

taking VIOXX compared to placebo.  Overall, patients taking VIOXX in the study had twice the risk of a heart attack compared to patients not taking the medication.

4.     After Defendant MERCK's submission to the FDA, VIOXX was approved for marketing in 1999, and introduced to market later that year.  After obtaining FDA approval, Defendant MERCK increased the available dosages of VIOXX, and promoted the drug despite having knowledge of studies demonstrating injuries associated with ingestion and use of the drug, as well as continued adverse reactions.  VIOXX was promoted as a lower risk alternative to other non-steroidal anti-inflammatory drugs.

5.     Industry-sponsored studies presented in June 2000 at the European United League Against Rheumatism, an organization of which MERCK is a member and corporate sponsor, demonstrated that VIOXX use resulted in a statistically significant increase in hypertension and stroke.  Not only did MERCK do nothing to further publicize these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, ("*Spin War Aside, Lessons Emerge from Cox-2 Trials,*"August 2000, page 3).

6.     Defendant MERCK minimized the risk of cardiovascular injuries posed by VIOXX notwithstanding that in MERCK'S own 8,000-patient trial of VIOXX more than twice as many arthritis patients taking VIOXX sustained heart attacks and strokes than those who took a competitor manufacturer's non-steroidal anti-inflammatory drug (naproxen). Commenting on this study in its 2000 Annual Report, Defendant MERCK reported, "*there was no difference in cardiovascular mortality between the group treated with Vioxx or naproxen.*" At the same time, Defendant MERCK admitted, "*significantly*

*fewer heart attacks were observed in patients taking naproxen (0.1 percent) compared to the group taking Vioxx 50mg (0.5) percent) in this study.*" In a further attempt to minimize the risks posed by VIOXX, Defendant MERCK assured the consumer public in its 2001 Annual Report that "*Merck scientists believe the weight of evidence supports the theory that naproxen decreased the heart attack rate.*" Defendant MERCK further boasted that, "*the robust clinical trial data available support the safety of VIOXX.*"

7.    On or about August 29, 2001, the Journal of the American Medical Association (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, (Dr. D. Mukhijee, et. al.), reporting that MERCK, in its VIOXX trials, concealed the relative risk of "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks").

8.    In August 2004, a study financed by the FDA showed that patients receiving high dosages of VIOXX had about 3.2 times the risk of heart attack or sudden death from heart problems than patients using other common pain killing medications. Even at this late date, Defendant MERCK criticized such findings, announcing publicly that it stood "*behind the efficacy and safety, including cardiovascular safety of VIOXX.*"

9.    In September 2004, Defendant MERCK finally withdrew VIOXX from the market, disclosing information about the strong association between the use of VIOXX and cardiovascular injury. However, the withdrawal from the market came far too late for LAWRENCE GOODMAN, who had already developed injuries from ingesting VIOXX.

## II. VENUE

10.    Pursuant to CPLR Section 503(a), venue is proper in New York County

because Defendant, MERCK's principal place of business is in New York County.

## III. THE PARTIES

11.    LAWRENCE GOODMAN currently resides at 6 Forest Pond Road

GreenLawn, NY 11740

12.    Defendant MERCK is incorporated in New Jersey, with its principal place

of business in New Jersey, the address being One Merck Drive, Whitehouse Station, New

Jersey 08889-0100, and has offices, does business, and is present in the State of New

York.

## IV. FACTUAL BACKGROUND

13.    Upon information and belief, VIOXX IS known as *rofecoxib*.

14.    Upon information and belief, VIOXX was or is, a registered trademark of

Defendant MERCK.

15.    At all times relevant to this action, the Defendant MERCK was in the

business of manufacturing, promoting, marketing, researching, distributing, and selling

prescription medications, including VIOXX, in the State of New York.

16.    Defendant MERCK distributed and sold VIOXX in part through retail

distributors.

17.    Before, after, and at the time of the manufacture, promotion, and sale of

VIOXX to LAWRENCE GOODMAN, Defendant MERCK possessed detailed technical

information and had knowledge that VIOXX caused significant and harmful side effects,

including but not limited to: cardiovascular injury, including heart attack and stroke and/or death, and was otherwise extremely hazardous.

18.    The Defendant MERCK concealed this information from LAWRENCE GOODMAN and the consuming public.

19.    The Defendant MERCK publicly represented that VIOXX was safe and posed no significant health hazards to customers.

20.    In reality VIOXX can be, and is, highly toxic and presents an unacceptable risk of harm to consumers.

21.    The Defendant MERCK unnecessarily put at risk and wrongfully caused LAWRENCE GOODMAN harm and injury without full, proper, and/or timely disclosure, and without warning of the potential associated risks, hazards and/or benefits of VIOXX in a truthful way, and/or otherwise acted in such a way as to be negligent, reckless, strictly liable, and otherwise liable for LAWRENCE GOODMAN injuries and associated damages.

### AS AND FOR THE FIRST CAUSE OF ACTION AGAINST MERCK FALSE & DECEPTIVE TRADE PRACTICES

22.    The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "20" as though more fully set forth herein.

23.    General Business Law Section Sec. 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce, or trade.

24.    Defendant MERCK either knew or should have known that VIOXX was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed.

25.     Defendant MERCK was under a duty to disclose this information to LAWRENCE GOODMAN, under laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint, because MERCK made representations and partial disclosures concerning the nature and quality of its product which it had a duty to correct, because MERCK was in a superior position to know the true state of facts about the dangerous and defective nature of VIOXX and its known risks to LAWRENCE GOODMAN and because the effects of VIOXX were latent.

26.     As a direct and proximate result of MERCK's fraud and other actionable conduct, described herein, LAWRENCE GOODMAN was caused to suffer damages on or about April 1, 2004 and thereafter, including but not limited to cardiac injury, cerebral injury, pain, suffering, permanent injury, and loss in the quality of life.

27.     As a direct and proximate result of MERCK's fraud and other actionable conduct described herein, LAWRENCE GOODMAN was caused to incur expenses for medical treatments and for non-medical care required as a result of his injuries and hospitalizations.

28.     The limitations on liability set forth in CPLR §1601 do not apply by reason of the exemption set forth in CPLR §1602(2) and (7).

29.     As a result of the foregoing, Plaintiff, LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

## AS AND FOR THE SECOND CAUSE OF ACTION AGAINST MERCK NEGLIGENCE

30.     The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "28" though more fully set forth herein.

31.     Defendant MERCK is liable because it breached its duty to LAWRENCE GOODMAN, MERCK was negligent and/or reckless in the licensing, testing, design, manufacturing, packaging, warning, advertising, promotion, distribution, and sale of VIOXX.

32.     The negligence of Defendant MERCK includes, but is not limited to negligence in the manufacturing, compounding, testing, inspecting, packaging, labeling, distributing, marketing, examining, and selling of VIOXX, as well as in failing to warn and/or to adequately warn the consuming public directly and though its prescribing physicians and medical professionals, of the unreasonable dangerous effects associated with VIOXX after MERCK had knowledge of the same, thereby breaching the continuing duty to warn.

33.     MERCK was likewise negligent in failing to accompany VIOXX with proper, adequate, and necessarily timely warnings regarding the possible adverse side effects associated with its use and the comparative severity and duration of such side effects.

34.     As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## AS AND FOR THE THIRD CAUSE OF ACTION AGAINST MERCK
## STRICT LIABILITY

35.     Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "33" as though more fully set forth herein.

36.     Defendant MERCK at all times relevant hereto, was engaged in the marketing, promotion, formulation, manufacture, distribution, and safe of VIOXX. Defendant MERCK is strictly liable in tort to the Plaintiff for injuries arising from the use of VIOXX.

37.     At the time of its distribution and thereafter, VIOXX was defective, unsafe, and unreasonably dangerous for its intended and/or foreseeable uses.

38.     The VIOXX manufactured and/or supplied by the Defendant MERCK was placed into the stream of commerce in a defective and unreasonably dangerous condition in that the foreseeable risks of VIOXX exceeded the benefits associated with its design or formulation.

39.     As a result of the foregoing, plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional limits of all lower courts.

## AS AND FOR THE FOURTH CAUSE OF ACTION AGAINST MERCK
## BREACH OF IMPLIED WARRANTY

40.     The plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "38" as though more fully set forth herein.

41.     At all times material hereto, Defendant MERCK marketed, sold, and distributed VIOXX, knew and promoted the use for which the aforesaid drug was being

used by the Plaintiff and prescribing medical professionals, and impliedly warranted to Plaintiff that VIOXX was of merchantable quality and safe for its intended use.

42.     The Plaintiff LAWRENCE GOODMAN and/or prescribing medical professionals reasonably relied upon the skill, expertise, and judgment of the Defendant MERCK in its representations as to the fact that VIOXX was safe for its intended use and of merchantable quality.

43.     The Defendant MERCK breached its implied warranty of merchantability in that VIOXX, at the time of its distribution and thereafter, was defective and not fit for the ordinary purpose for which it is used: reduction of inflammation and pain relief.

44.     As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## AS AND FOR THE FIFTH CAUSE OF ACTION AGAINST MERCK
## BREACH OF EXPRESS WARRANTY

45.     The plaintiff LAWRENCE GOODMAN hereby adopts, repeats and realleges by reference herein all the allegations contained in paragraphs "1" through "43" as though more fully set forth herein.

46.     The Defendant MERCK expressly warranted that VIOXX was safe for its intended use. VIOXX did not conform to MERCK's express representations including, but not limited to: the representation that it was well accepted in patient studies; the representation that it was safe; the representation that it did not have unacceptable levels of dangerous and life threatening side effects; representations set forth in this complaint as having been made by MERCK; and representations made in MERCK's written materials. As previously alleged, at all times relevant to the events giving rise to the

Plaintiff's causes of action, notice of the dangers of VIOXX had been presented to MERCK.

47.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in an amount exceeding the jurisdictional limits of all lower courts.

## AS AND FOR THE SIXTH CAUSE OF ACTION AGAINST MERCK FALSE ADVERTISING

48.    The plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "46" as though more fully set forth herein.

49.    General Business Law Section 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

50.    The aforementioned acts, representations and/or omissions by Defendant MERCK were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

51.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## AS AND FOR THE SEVENTH CAUSE OF ACTION AGAINST MERCK FRAUD

52.    The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "50" as though more fully set forth herein.

53.    Defendant MERCK made material misrepresentations regarding the dangers, risks, and/or potential side effects of VIOXX.

54.    MERCK knew the misrepresentations were false.

55.    MERCK made the misrepresentations with the intent to deceive its customers and potential customers, including Plaintiff LAWRENCE GOODMAN. Specifically, MERCK continued to promote VIOXX, without disclosing its risks, despite having knowledge of the following pieces of information, among others:

a.    In industry-sponsored studies presented in June 2000 at the European United League Against Rheumatism, an organization of which MERCK is a member and corporate sponsor, it was shown that VIOXX use resulted in a statistically significant increase in hypertension and stroke.

b.    In MERCK's own 8,000 patient trial of VIOXX more than twice as many arthritis patients taking VIOXX sustained heart attacks and strokes than those who took a competitor manufacturer's non-steroidal anti-inflammatory drug (naproxen). Commenting on this study in its 2000 Annual Report, MERCK reported, *"there was no difference in cardiovascular mortality between the group treated with Vioxx or naproxen."*

c.    MERCK minimized the risks posed by VIOXX, in its 2001 Annual Report stating: *"Merck scientists believe the weight of evidence supports the theory that naproxen decreased the heart attack rate."* MERCK further boasted that, *"the robust clinical trial data available support the safety of VIOXX."*

d.    On or about August 29, 2001, the Journal of the American Medical Association, (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, (Dr. D. Mukhijee, et al.), showing that MERCK had concealed the relative risk of "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") in VIOXX users in MERCK's trials.

e.    In August 2004, a study financed by the FDA showed that patients receiving high dosages of VIOXX had about 3.2 times the risk of heart attack or sudden death from heart

problems that patients using other common pain killing medications. Even at this date, MERCK stated that it stood *"behind the efficacy and safety, including cardiovascular safety, of VIOXX."*

  f.  Additional details of MERCK's material misrepresentations regarding VIOXX, which were knowingly made with the intent to deceive, are peculiarly within MERCK's knowledge and cannot be further articulated at the pleading stage.

56.  The plaintiff LAWRENCE GOODMAN justifiably relied upon MERCK's misrepresentations regarding the dangers, risks, and/or potential side effects of VIOXX.

57.  As a result of the Plaintiff's reliance, the Plaintiff suffered severe personal injuries.

58.  As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## PRAYER FOR RELIEF

59.  WHEREFORE, Plaintiff LAWRENCE GOODMAN demands judgment against the Defendant MERCK, including punitive and exemplary damages, in a sum exceeding the jurisdictional limits of all lower courts with regard to his cause of action, separately and individually, together with the interest, costs and disbursements of this action.

60.  Plaintiff seeks such other relief as is just and equitable.

Dated: New York, New York
April 13, 2007

         BY: _____
         WILLIAM HAMEL, ESQ.
         DINKES & SCHWITZER, ESQS.
         Attorneys for Plaintiff
         112 Madison Avenue
         New York, New York 10016

VERIFICATION

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK)


I, the undersigned, an attorney admitted to practice in the courts of New York State, state under penalty of perjury that I am one of the attorneys for the Plaintiff in the within action; I have read the foregoing SUMMONS AND COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe to be true. The reason this verification is made by me and not by my client, is that my client is not presently in the County where I maintain my offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigations conducted by my office.

Dated: New York, New York
       April 13, 2007


                                          _____
                                          WILLIAM HAMEL

INDEX NO.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LAWRENCE GOODMAN,

Plaintiff,

-against-

MERCK & CO., INC.,

Defendant.

SUMMONS AND VERIFIED COMPLAINT

DINKES & SCHWITZER

Attorneys for Plaintiff

Office and Post Office Address, Telephone

112 MADISON AVENUE

NEW YORK, N.Y. 10016

(212) 685-7800

UNITED LAWYERS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
= = = = = = = = = = = = = = = = = = = = X      Index #:105250/07
LAWRENCE GOODMAN,

                        Plaintiff,          **AFFIDAVIT OF SERVICE**

        -against-

MERCK & CO., INC. and

                        Defendants.
= = = = === = = = = = = = = = = = = = = = X
STATE OF NEW YORK  )
                   ) ss.
COUNTY OF NEW YORK )

**FILED**
APR 23 2007
NEW YORK
COUNTY CLERK'S OFFICE

        CHRISTOPHER LIGHTBOURNE, being duly sworn, deposes
and says:

        That I am not a party to this action, I am over 18 years of
age and reside in Kings County.  That on April 19, 2007, deponent
served a SUMMONS AND COMPLAINT by handing and delivering a true
copy upon CT Corporation on Behalf of Merck & Co., Inc., 111 8th
Avenue, New York, New York, at approximately 4:00 p.m., to an
individual(name) who indicated that she is authorized to accept
service.

        Deponent describes the individual served as follows:

            Name: Paula Rash
            Gender: FEMALE
            Height: 5'0
            Hair: BLOND
            Race: WHITE
            Age: 56


                                _____
                                CHRISTOPHER LIGHTBOURNE

Sworn to before me on
19th day of April, 2007

_____
Notary Public

SARIKA DOWNING
Notary Public, State of New York
No. 01DO6132236
Qualified in Westchester County
Commission Expires August 22, 20___

Index No.: 105250/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
==========================================
LAWRENCE GOODMAN,

                              Plaintiff,

          -against-

MERCK & CO., INC. and

                              Defendants.
==========================================

**AFFIDAVIT OF SERVICE**

==========================================

DINKES & SCHWITZER

Attorneys for Plaintiffs

Office and Post Office Address, Telephone

112 Madison Avenue

New York, New York 10016

212-683-3800


==========================================

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE GOODMAN,

        Plaintiff,

   -against-

MERCK & CO., INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - x

Index No.: 07/105250

*07 CV 3453*

**NOTICE OF FILING OF**
**NOTICE OF REMOVAL**

    PLEASE TAKE NOTICE that Defendant, Merck & Co., Inc. ("Merck"), through

undersigned counsel, has removed this case to the United States District Court for the Southern

District of New York by filing a Notice of Removal. A copy of Merck's Notice of Removal is

attached as Exhibit A hereto.

Dated: New York, New York
   April 30, 2007

FILED
MAY 02 2007
NEW YORK
COUNTY CLERKS OFFICE

      Respectfully submitted,

      HUGHES HUBBARD & REED LLP

      By: *Vilia B. Hayes*
        Theodore V. H. Mayer
        Vilia B. Hayes
        Robb W. Patryk

      One Battery Park Plaza
      New York, New York 10004-1482
      (212) 837-6000

      *Attorneys for Defendant Merck & Co., Inc.*

NY 1152098_1.DOC

**Exhibit A**



Theodore V. H. Mayer (TM 9748)
Vilia B. Hayes (VH 4601)
Robb W. Patryk (RP 0161)
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
(212) 837-6000

*Attorneys for Defendant Merck & Co., Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

LAWRENCE GOODMAN,            :    **No.:** O7cv3453

                              :

                    Plaintiff,  :

                              :    **NOTICE OF REMOVAL OF**

        -against-          :    **DEFENDANT MERCK & CO.,**

                              :    **INC.**

MERCK & CO., INC.,            :

                              :

                  Defendant.  :

- - - - - - - - - - - - - - - - - - - - - - - - - x

        PLEASE TAKE NOTICE that Merck & Co., Inc. ("Merck") hereby removes this

action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 from the Supreme Court of the State of

New York, County of New York to the United States District Court for the Southern District of

New York and respectfully states to this Court the following:

        1.      This action involves allegations regarding the prescription drug Vioxx®.

On February 16, 2005, the Judicial Panel on Multidistrict Litigation issued an order transferring

148 Vioxx products liability cases to the United States District Court for the Eastern District of

Louisiana (Fallon, J.) for coordinated pretrial proceedings under 28 U.S.C. § 1407. *In re Vioxx*

*Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). Merck intends to seek the transfer of

this action to that Multidistrict Litigation, *In re Vioxx Marketing, Sales Practices and Products*

*Liability Litigation,* MDL No. 1657, and will shortly provide to the MDL Panel notice of this

action pursuant to the "tag-along" procedure contained in the MDL Rules.

M00E146048

2.      Plaintiff Lawrence Goodman ("Plaintiff") filed this civil action against Merck in the Supreme Court of the State of New York, County of New York, bearing Index Number 07/105250.  Plaintiff seeks damages for "serious and permanent injuries, including cardiac injury, cerebral injury, cardiac dysfunction, and other cardiovascular injuries, organ impairment, damage, and pain and suffering" that he alleges were caused by his use of the prescription medicine Vioxx.  (Compl. ¶ 2.)  Plaintiff's claims are based on theories of false and deceptive trade practices, negligence, strict liability, breach of implied warranty, breach of express warranty, false advertising, and fraud.

3.      As more fully set out below, this case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Merck has (1) satisfied the procedural requirements for removal and (2) this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## I.    MERCK HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.

4.      Merck was served with a copy of Plaintiff's Verified Complaint ("Complaint") on April 19, 2007.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1441.  A true and correct copy of the Summons and Complaint are attached hereto as Exhibit 1.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 112(b) because it is the "district and division embracing the place where such action is pending."  *See* 28 U.S.C. § 1441(a).

6.      No previous application has been made for the relief requested herein.

2

M00E146049

7.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Court for the Supreme Court of the State of New York, New York County.

## II.    REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest and is between citizens of different states.

### A.    Complete Diversity Of Citizenship.

9.    There is complete diversity between Plaintiff, a citizen of New York, and Merck, a citizen of New Jersey.

10.    Merck is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of New Jersey with its principal place of business at One Merck Drive, White House Station, New Jersey and, therefore, is a citizen of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1).

11.    Upon information and belief, Plaintiff is a citizen of the State of New York.[1]

### B.    The Amount In Controversy Requirement Is Satisfied.

12.    It is apparent from the face of the Complaint that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of costs and interest.  Plaintiff seeks damages for alleged "serious and permanent injuries, including cardiac injury, cerebral injury, cardiac

---

1.    Plaintiff alleges that he is a resident of New York. (Compl. ¶ 11.)  Plaintiff alleges no other alternative state of residence.  Accordingly, New York is the state in which Plaintiff is domiciled and, therefore, the state of which he is a citizen.  *See* 28 U.S.C. § 1332(a); *see also Linardos v. Fortuna*, 157 F.3d 945, 946 (2d Cir. 1998) ("[f]or purposes of diversity jurisdiction, a party's citizenship depends on his domicile.").

3

MODE146050

dysfunction, and other cardiovascular injuries, organ impairment, damage, and pain and suffering" that Plaintiff alleges were caused by his use of the pharmaceutical Vioxx, which was manufactured by Merck. (Compl. ¶ 2.) The foregoing makes it apparent that the amount in controversy for Plaintiff is well in excess of $75,000. *See, e.g., James v. Gardner*, 2004 U.S. Dist. LEXIS 23174, *10 (E.D.N.Y. 2004) (where plaintiff fails to represent a definitive amount in controversy, the court may look to defendant's petition for removal for a showing of reasonable probability that plaintiff's claim for damages exceeds the jurisdictional amount).

13.    Federal courts confronted by similar complaints in which plaintiffs alleged that they suffered similar injuries as a result of their use of Vioxx found that they have subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and, either explicitly or implicitly, concluded that the amount in controversy exceeded $75,000. *See, e.g., Porter v. Merck & Co., Inc.*, No. 4:03CV12LN, Memorandum and Order at 2 (S.D. Miss. June 17, 2003);[2] *Zeedyk v. Merck & Co., Inc.*, No. 02C4203, Order at 2 (N.D. Ill. August 30, 2002).[3]

---

2.    True and correct copies of the complaint and unpublished decision in *Porter* are attached hereto as Exhibit 2.

3.    True and correct copies of the complaint and Court's Order in *Zeedyk* are attached hereto as Exhibit 3.

M00DE146051

WHEREFORE, Defendant Merck respectfully removes this action from the

Supreme Court of the State of New York, County of New York, pursuant to 28 U.S.C. § 1441.

DATED:    New York, New York
            April 30, 2007

                                    Respectfully submitted,

                                    HUGHES HUBBARD & REED LLP

                                    By: _____
                                      Theodore V. H. Mayer (TM 9748)
                                      Vilia B. Hayes (VH 4601)
                                      Robb W. Patryk (RP 0161)

                                    One Battery Park Plaza
                                    New York, New York  10004-1482
                                    (212) 837-6000

                                    *Attorneys for Defendant Merck & Co., Inc.*

MODE146052

**Exhibit 1**



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
================================================X

LAWRENCE GOODMAN,

INDEX NO.: 07 | 05250

Plaintiff,

VERIFIED
COMPLAINT

-against-

MERCK & CO., INC.,

```
WCS&R

APR 2 0 2007

RECEIVED
```

Defendant.
================================================X

## I. INTRODUCTION

1.    The Plaintiff, LAWRENCE GOODMAN, brings this civil action for damages arising from his ingestion of the non-steroidal anti-inflammatory drug VIOXX ("VIOXX"), manufactured and distributed by Defendant MERCK & CO., INC. ("MERCK").

2.    On or about April 2004, and August 2004, and December 7, 2004, and thereafter, as a result of the ingestion of VIOXX, LAWRENCE GOODMAN, developed serious and permanent injuries, including cardiac injury, cerebral injury, cardiac dysfunction, and other cardiovascular injuries, organ impairment, damage, and pain and suffering.

3.    VIOXX has been linked to an increased risk of cardiac arrest and stroke in patients taking the medication. On September 27, 2004, Defendant MERCK, the manufacturer of VIOXX, disclosed to the United States Food & Drug Administration ("FDA") that the Data Safety Monitoring Board for an ongoing efficacy study of VIOXX had recommended the study be halted for safety reasons. The study demonstrated an increased risk of cardiovascular events, including heart attack and stroke, in patients

taking VIOXX compared to placebo.  Overall, patients taking VIOXX in the study had twice the risk of a heart attack compared to patients not taking the medication.

4.    After Defendant MERCK's submission to the FDA, VIOXX was approved for marketing in 1999, and introduced to market later that year.  After obtaining FDA approval, Defendant MERCK increased the available dosages of VIOXX, and promoted the drug despite having knowledge of studies demonstrating injuries associated with ingestion and use of the drug, as well as continued adverse reactions.  VIOXX was promoted as a lower risk alternative to other non-steroidal anti-inflammatory drugs.

5.    Industry-sponsored studies presented in June 2000 at the European United League Against Rheumatism, an organization of which MERCK is a member and corporate sponsor, demonstrated that VIOXX use resulted in a statistically significant increase in hypertension and stroke.  Not only did MERCK do nothing to further publicize these studies, or warn consumers, but it denied the results with respect to hypertension in the official publication of the American Pharmaceutical Association, Pharmacy Today, ("*Spin War Aside, Lessons Emerge from Cox-2 Trials,*"August 2000, page 3).

6.    Defendant MERCK minimized the risk of cardiovascular injuries posed by VIOXX notwithstanding that in MERCK'S own 8,000-patient trial of VIOXX more than twice as many arthritis patients taking VIOXX sustained heart attacks and strokes than those who took a competitor manufacturer's non-steroidal anti-inflammatory drug (naproxen). Commenting on this study in its 2000 Annual Report, Defendant MERCK reported, "*there was no difference in cardiovascular mortality between the group treated with Vioxx or naproxen.*" At the same time, Defendant MERCK admitted, "*significantly*

M00E146055

*fewer heart attacks were observed in patients taking naproxen (0.1 percent) compared to the group taking Vioxx 50mg (0.5) percent) in this study."* In a further attempt to minimize the risks posed by VIOXX, Defendant MERCK assured the consumer public in its 2001 Annual Report that *"Merck scientists believe the weight of evidence supports the theory that naproxen decreased the heart attack rate."* Defendant MERCK further boasted that, *"the robust clinical trial data available support the safety of VIOXX."*

7.     On or about August 29, 2001, the <u>Journal of the American Medical Association</u> (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, (Dr. D. Mukhijee, et. al.), reporting that MERCK, in its VIOXX trials, concealed the relative risk of "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks").

8.     In August 2004, a study financed by the FDA showed that patients receiving high dosages of VIOXX had about 3.2 times the risk of heart attack or sudden death from heart problems than patients using other common pain killing medications. Even at this late date, Defendant MERCK criticized such findings, announcing publicly that it stood *"behind the efficacy and safety, including cardiovascular safety of VIOXX."*

9.     In September 2004, Defendant MERCK finally withdrew VIOXX from the market, disclosing information about the strong association between the use of VIOXX and cardiovascular injury.  However, the withdrawal from the market came far too late for LAWRENCE GOODMAN, who had already developed injuries from ingesting VIOXX.

M00E146056

## II. VENUE

10.    Pursuant to CPLR Section 503(a), venue is proper in New York County because Defendant, MERCK's principal place of business is in New York County.

## III. THE PARTIES

11.    LAWRENCE GOODMAN currently resides at 6 Forest Pond Road GreenLawn, NY 11740

12.    Defendant MERCK is incorporated in New Jersey, with its principal place of business in New Jersey, the address being One Merck Drive, Whitehouse Station, New Jersey 08889-0100, and has offices, does business, and is present in the State of New York.

## IV. FACTUAL BACKGROUND

13.    Upon information and belief, VIOXX IS known as *rofecoxib*.

14.    Upon information and belief, VIOXX was or is, a registered trademark of Defendant MERCK.

15.    At all times relevant to this action, the Defendant MERCK was in the business of manufacturing, promoting, marketing, researching, distributing, and selling prescription medications, including VIOXX, in the State of New York.

16.    Defendant MERCK distributed and sold VIOXX in part through retail distributors.

17.    Before, after, and at the time of the manufacture, promotion, and sale of VIOXX to LAWRENCE GOODMAN, Defendant MERCK possessed detailed technical information and had knowledge that VIOXX caused significant and harmful side effects,

M00E146057

including but not limited to: cardiovascular injury, including heart attack and stroke and/or death, and was otherwise extremely hazardous.

18. The Defendant MERCK concealed this information from LAWRENCE GOODMAN and the consuming public.

19. The Defendant MERCK publicly represented that VIOXX was safe and posed no significant health hazards to customers.

20. In reality VIOXX can be, and is, highly toxic and presents an unacceptable risk of harm to consumers.

21. The Defendant MERCK unnecessarily put at risk and wrongfully caused LAWRENCE GOODMAN harm and injury without full, proper, and/or timely disclosure, and without warning of the potential associated risks, hazards and/or benefits of VIOXX in a truthful way, and/or otherwise acted in such a way as to be negligent, reckless, strictly liable, and otherwise liable for LAWRENCE GOODMAN injuries and associated damages.

## AS AND FOR THE FIRST CAUSE OF ACTION AGAINST MERCK
## FALSE & DECEPTIVE TRADE PRACTICES

22. The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "20" as though more fully set forth herein.

23. General Business Law Section Sec. 349(a) declares unlawful any deceptive acts or practices in the conduct of any business, commerce, or trade.

24. Defendant MERCK either knew or should have known that VIOXX was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed.

M00E146058

25.    Defendant MERCK was under a duty to disclose this information to LAWRENCE GOODMAN, under laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this Complaint, because MERCK made representations and partial disclosures concerning the nature and quality of its product which it had a duty to correct, because MERCK was in a superior position to know the true state of facts about the dangerous and defective nature of VIOXX and its known risks to LAWRENCE GOODMAN and because the effects of VIOXX were latent.

26.    As a direct and proximate result of MERCK's fraud and other actionable conduct, described herein, LAWRENCE GOODMAN was caused to suffer damages on or about April 1, 2004 and thereafter, including but not limited to cardiac injury, cerebral injury, pain, suffering, permanent injury, and loss in the quality of life.

27.    As a direct and proximate result of MERCK's fraud and other actionable conduct described herein, LAWRENCE GOODMAN was caused to incur expenses for medical treatments and for non-medical care required as a result of his injuries and hospitalizations.

28.    The limitations on liability set forth in CPLR §1601 do not apply by reason of the exemption set forth in CPLR §1602(2) and (7).

29.    As a result of the foregoing, Plaintiff, LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amount of all lower courts.

## AS AND FOR THE SECOND CAUSE OF ACTION AGAINST MERCK
## NEGLIGENCE

30.    The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "28" though more fully set forth herein.

31.    Defendant MERCK is liable because it breached its duty to LAWRENCE GOODMAN, MERCK was negligent and/or reckless in the licensing, testing, design, manufacturing, packaging, warning, advertising, promotion, distribution, and sale of VIOXX.

32.    The negligence of Defendant MERCK includes, but is not limited to negligence in the manufacturing, compounding, testing, inspecting, packaging, labeling, distributing, marketing, examining, and selling of VIOXX, as well as in failing to warn and/or to adequately warn the consuming public directly and though its prescribing physicians and medical professionals, of the unreasonable dangerous effects associated with VIOXX after MERCK had knowledge of the same, thereby breaching the continuing duty to warn.

33.    MERCK was likewise negligent in failing to accompany VIOXX with proper, adequate, and necessarily timely warnings regarding the possible adverse side effects associated with its use and the comparative severity and duration of such side effects.

34.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

M00E146060

## AS AND FOR THE THIRD CAUSE OF ACTION AGAINST MERCK
### STRICT LIABILITY

35.    Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "33" as though more fully set forth herein.

36.    Defendant MERCK at all times relevant hereto, was engaged in the marketing, promotion, formulation, manufacture, distribution, and safe of VIOXX. Defendant MERCK is strictly liable in tort to the Plaintiff for injuries arising from the use of VIOXX.

37.    At the time of its distribution and thereafter, VIOXX was defective, unsafe, and unreasonably dangerous for its intended and/or foreseeable uses.

38.    The VIOXX manufactured and/or supplied by the Defendant MERCK was placed into the stream of commerce in a defective and unreasonably dangerous condition in that the foreseeable risks of VIOXX exceeded the benefits associated with its design or formulation.

39.    As a result of the foregoing, plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional limits of all lower courts.

## AS AND FOR THE FOURTH CAUSE OF ACTION AGAINST MERCK
### BREACH OF IMPLIED WARRANTY

40.    The plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "38" as though more fully set forth herein.

41.    At all times material hereto, Defendant MERCK marketed, sold, and distributed VIOXX, knew and promoted the use for which the aforesaid drug was being

M00E146061

used by the Plaintiff and prescribing medical professionals, and impliedly warranted to Plaintiff that VIOXX was of merchantable quality and safe for its intended use.

42.    The Plaintiff LAWRENCE GOODMAN and/or prescribing medical professionals reasonably relied upon the skill, expertise, and judgment of the Defendant MERCK in its representations as to the fact that VIOXX was safe for its intended use and of merchantable quality.

43.    The Defendant MERCK breached its implied warranty of merchantability in that VIOXX, at the time of its distribution and thereafter, was defective and not fit for the ordinary purpose for which it is used: reduction of inflammation and pain relief.

44.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## AS AND FOR THE FIFTH CAUSE OF ACTION AGAINST MERCK BREACH OF EXPRESS WARRANTY

45.    The plaintiff LAWRENCE GOODMAN hereby adopts, repeats and realleges by reference herein all the allegations contained in paragraphs "I" through "43" as though more fully set forth herein.

46.    The Defendant MERCK expressly warranted that VIOXX was safe for its intended use. VIOXX did not conform to MERCK's express representations including, but not limited to: the representation that it was well accepted in patient studies; the representation that it was safe; the representation that it did not have unacceptable levels of dangerous and life threatening side effects; representations set forth in this complaint as having been made by MERCK; and representations made in MERCK's written materials. As previously alleged, at all times relevant to the events giving rise to the

M00E1460062

Plaintiff's causes of action, notice of the dangers of VIOXX had been presented to MERCK.

47.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in an amount exceeding the jurisdictional limits of all lower courts.

## AS AND FOR THE SIXTH CAUSE OF ACTION  AGAINST MERCK
## FALSE ADVERTISING

48.    The plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "46" as though more fully set forth herein.

49.    General Business Law Section 350 declares unlawful advertising that is false or misleading in a material respect in the conduct of any business or in the furnishing of any service.

50.    The aforementioned acts, representations and/or omissions by Defendant MERCK were deceptive and misleading practices and/or advertising within the meaning of New York's General Business Law.

51.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## AS AND FOR THE SEVENTH CAUSE OF ACTION AGAINST MERCK
## FRAUD

52.    The Plaintiff LAWRENCE GOODMAN hereby adopts, repeats, and realleges by reference herein all the allegations contained in paragraphs "1" through "50" as though more fully set forth herein.

53.    Defendant MERCK made material misrepresentations regarding the dangers, risks, and/or potential side effects of VIOXX.

M00E146063

54.    MERCK knew the misrepresentations were false.

55.    MERCK made the misrepresentations with the intent to deceive its customers and potential customers, including Plaintiff LAWRENCE GOODMAN. Specifically, MERCK continued to promote VIOXX, without disclosing its risks, despite having knowledge of the following pieces of information, among others:

a.    In industry-sponsored studies presented in June 2000 at the European United League Against Rheumatism, an organization of which MERCK is a member and corporate sponsor, it was shown that VIOXX use resulted in a statistically significant increase in hypertension and stroke.

b.    In MERCK's own 8,000 patient trial of VIOXX more than twice as many arthritis patients taking VIOXX sustained heart attacks and strokes than those who took a competitor manufacturer's non-steroidal anti-inflammatory drug (naproxen). Commenting on this study in its 2000 Annual Report, MERCK reported, *"there was no difference in cardiovascular mortality between the group treated with Vioxx or naproxen."*

c.    MERCK minimized the risks posed by VIOXX, in its 2001 Annual Report stating: *"Merck scientists believe the weight of evidence supports the theory that naproxen decreased the heart attack rate."* MERCK further boasted that, *"the robust clinical trial data available support the safety of VIOXX."*

d.    On or about August 29, 2001, the Journal of the American Medical Association, (JAMA) published a peer-reviewed human epidemiologic study by the Cleveland Clinic Foundation, Cleveland, Ohio, (Dr. D. Mukhijee, et al.), showing that MERCK had concealed the relative risk of "confirmed adjudicated thrombotic cardiovascular event" (defined in the article as "myocardial infarction, unstable angina, cardiac thrombus, resuscitated cardiac arrest, sudden or unexplained death, ischemic stroke, and transient ischemic attacks") in VIOXX users in MERCK's trials.

e.    In August 2004, a study financed by the FDA showed that patients receiving high dosages of VIOXX had about 3.2 times the risk of heart attack or sudden death from heart

M00E146064

problems that patients using other common pain killing medications. Even at this date, MERCK stated that it stood *"behind the efficacy and safety, including cardiovascular safety, of VIOXX."*

f.    Additional details of MERCK's material misrepresentations regarding VIOXX, which were knowingly made with the intent to deceive, are peculiarly within MERCK's knowledge and cannot be further articulated at the pleading stage.

56.    The plaintiff LAWRENCE GOODMAN justifiably relied upon MERCK's misrepresentations regarding the dangers, risks, and/or potential side effects of VIOXX.

57.    As a result of the Plaintiff's reliance, the Plaintiff suffered severe personal injuries.

58.    As a result of the foregoing, Plaintiff LAWRENCE GOODMAN has been damaged in a sum exceeding the jurisdictional amounts of all lower courts.

## PRAYER FOR RELIEF

59.    WHEREFORE, Plaintiff LAWRENCE GOODMAN demands judgment against the Defendant MERCK, including punitive and exemplary damages, in a sum exceeding the jurisdictional limits of all lower courts with regard to his cause of action, separately and individually, together with the interest, costs and disbursements of this action.

60.    Plaintiff seeks such other relief as is just and equitable.

Dated: New York, New York
April 13, 2007

BY: _____
WILLIAM HAMEL, ESQ.
DINKES & SCHWITZER, ESQS.
Attorneys for Plaintiff
112 Madison Avenue
New York, New York 10016

M00E146065

## VERIFICATION

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK)

I, the undersigned, an attorney admitted to practice in the courts of New York State, state under penalty of perjury that I am one of the attorneys for the Plaintiff in the within action; I have read the foregoing SUMMONS AND COMPLAINT and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe to be true. The reason this verification is made by me and not by my client, is that my client is not presently in the County where I maintain my offices. The grounds of my belief as to all matters not stated upon my own knowledge are the materials in my file and the investigations conducted by my office.

Dated: New York, New York
       April 13, 2007

WILLIAM HAMEL

INDEX NO.:

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

LAWRENCE GOODMAN,

                                                    Plaintiff,

                            -against-

MERCK & CO., INC.,

                                                    Defendant.

SUMMONS AND VERIFIED COMPLAINT

DINKES & SCHWITZER

Attorneys for Plaintiff

Office and Post Office Address, Telephone

112 MADISON AVENUE

NEW YORK, N.Y. 10016

(212) 685-7800

M00E1460G7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
= = = = = = = = = = = = = = = = = = =X
LAWRENCE GOODMAN

INDEX #:

DATE PURCHASED: *0705250*

Plaintiff,

SUMMONS

Plaintiff designates
New York County as
place of trial

-against-

The basis of the
venue is:

MERCK & CO., INC.,

Defendant's place of
Business

Defendant.
= = = = = = = = = = = = = = = = = = =X

To the above named defendant(s):

    YOU ARE HEREBY SUMMONED to answer the complaint in this
action and to serve a copy of your answer, or, if the
complaint is not served with this summons, to serve a notice
of appearance on the Plaintiff's Attorneys within 20 days
after the service of this summons exclusive of the day of
service (or within 30 days after the service is complete if
this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or
answer, judgment will be taken against you by default for the
relief demanded herein.

Dated: New York, New York
April 17, 2007

DINKES & SCHWITZER, ESQS.

BY: WILLIAM HAMEL, ESQ.
Attorneys for Plaintiff
112 Madison Avenue
New York City, N.Y. 10016
(212) 683-3800

Defendant:

Merck & Co., Inc.
c/o CT Corporation
111 8th Avenue
New York, NY 10011

**Exhibit 2**



IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF JASPER
COUNTY, MISSISSIPPI

AMOS PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                              **PLAINTIFFS**

VS.                                                                  NO. 2002-_12-0236_

MERCK & COMPANY, INC.
(hereinafter "Merck"); G.D. Searle and Co.
(hereinafter "Searle") a subsidiary of
Pharmacia, Inc. (hereinafter "Pharmacia"), a              **F I L E D**
foreign corporation; Monsanto Company;               JASPER COUNTY, MISS.
Pfizer, Inc.; John Doe #1, M.D., John Doe #2,               DEC 3 1 2002
M.D., John Doe #3, M.D., and John Doe #4,
M.D., all Mississippi physicians whose true               MARK A. ISHEE
names and identities are presently unknown                 CIRCUIT CLERK
or unconfirmed but will be substituted by
amendment                                                            **DEFENDANTS**

## COMPLAINT

COME NOW the Plaintiffs, Amos Porter, Flora Sumrall, and Annie Laurie
Varnado, in the above-styled and numbered cause, by and through their attorneys of
record, and file this their Complaint against the Defendants, and in support thereof
would show unto the Court the following, to-wit:

1.      This is a civil action brought on behalf of Plaintiffs who were prescribed
and used the prescription medication VIOXX (Rofecoxib) and/or CELEBREX
(Celecoxib). Plaintiff Sumrall used Vioxx and Celebrex which caused her to suffer renal
problems, severe edema, and other injuries.  Plaintiff Porter used Celebrex which
caused him to suffer a stroke and other injuries.  Plaintiff Varnado used Vioxx which
caused her to suffer from heart problems, edema and other injuries.  This action seeks
damages for personal injuries and damages caused by the drugs named herein and

MODE146070

ingested by Plaintiffs.

2.    Plaintiff Amos Porter is an adult resident of The First Judicial District of Jasper County, Mississippi. Plaintiff Flora Sumrall and Annie Laura Varnado are adult residents of Clarke County, Mississippi.

3.    Defendant, Merck & Co., Inc., (hereinafter "Merck") is a New Jersey corporation. At all times relevant hereto, Merck was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Vioxx (Rofecoxib). Defendant Merck may be served through its registered agent: CT Corporation System; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

4.    Defendant G. D. Searle & Co. (hereinafter "Searle") is a subsidiary of Pharmacia, Inc., and is upon information, knowledge and belief an Illinois Corporation, and is not registered to do business in Mississippi. As such, Defendant Searle can be served via certified mail through its CEO Alan L. Heller at its principle place of business: 5200 Old Orchard Road, Skobie, Illinois, 60077. At all times relevant to this action was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pharmacia is a Deleware Corporation licensed and registered to do business in Mississippi and can be served through its registered agent:  CT Corporation System: 631 Lakeland East Drive; Flowood, Mississippi, 39208.

5.    Monsanto Company (hereinafter "Monsanto") is the parent of Pharmacia Inc. and is a Delaware Corporation. At all times relevant hereto Monsanto through its subsidiary companies was in the business of manufacturing, marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Monsanto is

-2-

M00E146071

licensed and registered to do business in Mississippi, and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

6.    Defendant Pfizer Inc. (hereinafter "Pfizer") is a Delaware corporation, and at all times relevant hereto Pfizer was in the business of marketing, selling and distributing the pharmaceutical product Celebrex (Celecoxib). Defendant Pfizer is licenses and registered to do business in Mississippi and may be served through its agent: CT Corporation; 631 Lakeland East Drive; Flowood, Mississippi, 39208.

7.    Defendants John Doe #1, M.D., John Doe #2, M.D., John Doe #3, M.D., and John Doe #4, M.D., are physicians licensed by the State of Mississippi with residence and/or principal place of business in Mississippi, whose identities are at present unknown or unconfirmed and will be substituted by amendment.

8.    Venue is proper in The First Judicial District of Jasper County, Mississippi as the part of the cause of action and injury occurred in The First Judicial District of Jasper County, Mississippi.

9.    The claims of Plaintiffs accrued in whole or in part in this judicial district and the Plaintiff resides in this judicial circuit. Some of these Defendants are foreign corporations which have been and are currently engaged in business, directly or by authorized agent, in this judicial district. Venue and jurisdiction are therefore proper. The claims of Plaintiff herein satisfy the jurisdictional amount of this court.

10.    Vioxx is a pharmaceutical treatment for musculoskeletal joint pain associated with osteoarthritis, among other maladies. Defendant Merck did manufacture, design, package, market and distribute this drug. This Defendant encouraged the use of this drug in improper customers, misrepresented the safety and

M00E146072

effectiveness of this drug and concealed or understated its dangerous side effects. This Defendant aggressively marketed this drug directly to the consuming mediums, including, but not limited to, print and television advertisements. This Defendant did this to increase sales and profits.

11.    Celebrex is a pharmaceutical treatment for musculaskeletal joint pain associated with osteoarthritis among other maladies. Defendants Searle, Pharmacia, Monsanto and Pfizer did manufacture, design, package, market and distribute this drug. Defendants Seale, Pharmacia, Monsanto and Pfizer encouraged the use of this drug in improper customers, misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. These Defendants aggressively marketed this drug directly to the consuming public, although only available through prescription, through the use of various marketing mediums, including, but not limited to, print and television advertisements. These Defendants did this to increase sales and profits.

12.    At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their products as herein set forth, yet continued to design, manufacture, market, distribute and sell their products so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. The drug company Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's individual rights, and hence punitive damages are appropriate.

-4-

M00E146073

<u>COUNT I</u>

13.    Plaintiffs allege all prior paragraphs of this complaint as if fully set out herein.

14.    The pharmaceutical Vioxx (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant Merck, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

15.    Further, the pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign, both directly to the consuming public and indirectly to physicians through drug sales representatives.

16.    The pharmaceutical Vioxx designed, manufactured, distributed, sold and/or supplied by Defendant Merck was defective due to inadequate testing.

17.    Additionally Defendant Merck failed to provide timely and adequate post-marketing warnings or instructions after the manufacturer knew of the risk of injury from Vioxx, via post-marketing data.  The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Varnados' injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado deny judgment against Defendant Merck in an amount of compensatory and punitive damages as a jury deems reasonable plus costs.

<u>COUNT II</u>

18.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

M00E146074

herein.

19.    The pharmaceutical Celebrex (Celecoxib) designed, manufactured, sold and/or supplied by Defendants Searle, Pharmacia, Monsanto and/or Pfizer, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

20.    Further, the pharmaceutical Celebrex designed, manufactured, sold and/or supplied by one or more of the above-referenced Defendants was defective in its marketing due to inadequate warnings or instructions, both independently and when coupled with the aggressive marketing warnings or instructions, both independently and when coupled with the aggressive marketing campaign the above-referenced Defendants initiated in relation to this product, both directly to the consuming public and indirectly to the physicians through drug sales representatives.

21.    The pharmaceutical Celebrex designed, manufactured, distributed, marketed, sold and/or supplied by one or more of the above-referenced Defendants was defective due to inadequate testing.

22.    Additionally, Defendants Searle, Pharmacia, Monsanto and Pfizer failed to provide timely and adequate post-marketing warnings or instructions after the Defendants knew or learned of the risk of injury from Celebrex via post-marketing data. The defective nature of this product is a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

M00E146075

## COUNT III

23.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out herein.

24.    Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacturer, marketing, sale testing and/or distribution of Vioxx into the stream of commerce. Defendant Merck knew or should have known that Vioxx created an unreasonable risk of bodily harm, including the risk of death.

25.    Despite the fact that Defendant Merck knew or should have known that Vioxx caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, this Defendant continued to market, and to this day continues to market, Vioxx to the consuming public when there were and are adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

26.    Defendant Merck knew or should have known that consumers such as Plaintiffs Sumrall and Varnado would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care as described herein. Defendant's negligence was a contributing cause of Plaintiffs Sumrall and Varnado's injuries.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IV

27.    Plaintiffs reallege all prior paragraphs of the Complaint as if set out herein.

-7-

M00E146076

28.    Defendants Searle, Pharmacia, Monsanto and Pfizer had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of Celebrex (Celecoxib) into the stream of commerce. These Defendants failed to exercise ordinary care in the design, manufacture, sale, testing and/or distribution of Celebrex in the stream of commerce.

29.    These Defendants knew or should have known that Celebrex created an unreasonable risk or bodily harm, including the risk of death.

30.    Despite the fact that Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that Celebrex caused unreasonably, dangerous side effects which many users would by unable to remedy by any means, these Defendants continued to market, and continue to, market to this day, Celebrex to the consuming public, when there were and are adequate and safer alternative methods of treatment, or opportunities for more meaningful warnings.

31.    Defendants Searle, Pharmacia, Monsanto and Pfizer knew or should have known that consumers such as Plaintiffs Sumrall and Porter would foreseeably suffer injury or death as a result of Defendants' failure to exercise ordinary care as described above. Defendants' negligence was a contributing cause of Plaintiffs Sumrall and Porter's injuries.

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT V

32.    Plaintiffs reallege all prior paragraphs of this complaint as if fully set out

-8-

M00E146077

hereto.

33.    Defendant Merck made express representations to the consuming public at large through its aggressive marketing and advertising campaigns relative to its product, Vioxx.

34.    Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, Vioxx.

35.    Vioxx does not conform to the express representations made through Defendant Merck's advertising.

36.    Vioxx does not conform to the express representations made by Defendant Merck's agents/sales representatives.

37.    Defendants Merck conduct in this matter was contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demands judgment against Defendant Merck in such and amount of compensatory and damages as a jury deems reasonable, plus costs.

## COUNT VI

38.    Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein.

39.    Defendants Searle, Pharmacia, Monsanto and Pfizer made express representations to the consuming public at large through their aggressive marketing and advertising campaigns relative to their product, Celebrex.

40.    Defendants Searle, Pharmacia, Monsanto and Pfizer through their detail sales representatives, made representations of the safety and efficacy of their product,

M00E146078

Celebrex.

41.    Celebrex does not conform to the express representations made through Defendants' advertising.

42.    Celebrex does not conform to the express representations made by Defendants' agents/sales representatives.

43.    These Defendants' conduct in this matter was a contributing cause of injuries and damages suffered by Plaintiffs Sumrall and Porter.

WHEREFORE, plaintiffs Sumrall and Porter demand judgment against Defendants Searle Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VII

44.    Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

45.    At the time Defendant Merck marketed, sold, and distributed Vioxx for use by the general consuming public, including Plaintiffs Sumrall and Vamado, this Defendant knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

46.    Plaintiffs Sumrall and Vamado reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality, and safe and fit for its intended use.

47.    Contrary to such implied warranty, Vioxx was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used

M00E146079

described above.

48.    Defendant Merck conduct in this regard was contributing cause of injuries and damages of Plaintiffs Sumrall and Varnado.

WHEREFORE, this Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT VIII

49.    Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

50.    At the time Defendants Searle, Pharmacia, Monsanto and Pfizer marketed, sold and distributed Celebrex for use by the general consuming public, including Plaintiffs Sumrall and Porter, these Defendants knew of the use for which Celebrex was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

51.    Plaintiffs Sumrall and Porter reasonably relied upon the skill and judgment of these Defendants as to whether Celebrex was of merchantable quality and safe and fit for its intended use.

52.    Contrary to such implied warranty, Celebrex was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used as described above.

53.    These Defendants' conduct in this regard was a contributing cause of Plaintiffs Sumrall and Porter's injuries and damages.

-11-

MODE146080

WHEREFORE, Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Mansanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT IX

54.     Plaintiffs reallege all prior paragraphs of the Complaint as if fully set out herein.

55.     Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that Vioxx was safe and effective. Defendant Merck represented Vioxx as safe so that the general consuming public, including Plaintiffs Sumrall and Varnado in particular, would rely upon said representations when purchasing said products.

56.     Prior to and following the introduction of Vioxx into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a public relations and advertising/marketing campaign to market its product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising. Defendant Merck's representations made concerning Vioxx as a safe and effective drug were made so that Plaintiffs Sumrall and Varnado, and the general consuming public, would rely on said representations and seek prescriptions for this drug from their treating physicians. In fact, Plaintiffs Sumrall and Varnado did rely on Defendant Merck's representations in this regard.

60.     At the time Defendant Merck made these representations, it was aware that these representations were false and/or made these representations with

M00E146081

reckless disregard to their truth.   As a result of Defendant Merck's fraud and misrepresentation, Plaintiffs Sumrall and Varnado suffered injuries and damages.

WHEREFORE, Plaintiffs Sumrall and Varnado demand judgment against Defendant Merck in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT X

61.        Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

62.        Defendants Searle, Pharmacia, Monsanto and Pfizer negligently, recklessly, intentionally and fraudulently made material misrepresentations that Celebrex was safe and effective.  These Defendants represented Celebrex as safe so that the general consuming public, including Plaintiff's decedent in particular, would rely upon said representations when purchasing said products.

63.        Prior to and following the introduction of Celebrex into the market as a prescribable pharmaceutical medication, Defendants Searle, Pharmacia, Monsanto and Pfizer set in motion a public relations and advertising/marketing campaign to market their product to the general consuming public by way of press releases, print advertisement, mass mail out advertisements and TV advertising.   Defendants' representations made concerning Celebrex as a safe and effective drug were made so that Plaintiffs Sumrall and Porter and the general consuming public would rely on said representations and seek prescriptions for this drug from their treating physicians.  In fact, Plaintiffs Sumrall and Porter did rely on Defendants Searle, Pharmacia, Monsanto and Pfizer's representations.

-13-

M00E146082

64.     At the time Defendants Searle, Pharmacia, Monsanto and Pfizer made these representations, it was aware that these representations were false and/or made these representations with a reckless disregard to their truth.  As a result of these Defendants' fraud and misrepresentation, Plaintiffs Sumrall and Porter suffered injuries.

WHEREFORE, this Plaintiffs Sumrall and Porter demand judgment against Defendants Searle, Pharmacia, Monsanto, and Pfizer in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## COUNT XI

65.     Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

66.     Plaintiffs sought the care and treatment of Defendants John Doe #1, M.D., John Doe, M.D. #2, John Doe #3, M.D., and John Doe, #4 M.D. for various ailments and maladies.

67.     In relation to said care and treatment, these Defendants prescribed Vioxx to Plaintiffs Sumrall and Varnado and Celebrex to Plaintiffs Sumrall and Porter.

68.     Defendants John Does, M.D., #1, #2, #3 and #4 knew, or should have known, of the dangerous side effects of these medications, and prescribing said medications in light of such knowledge presents a deviation from the standard of care generally exercised by physicians under like or similar circumstances and rises to the level of medical negligence.

69.     The medical negligence of Defendants John Does, M.D., #1, #2, #3 and #4 was a direct and proximate cause of the Plaintiffs' injuries.

-14-

M00E146083

WHEREFORE, Plaintiffs demand judgment against these Defendants as applicable to each in such an amount of compensatory and punitive damages as a jury deems reasonable, plus costs.

## DAMAGES

70.     Upon the trial of this case, it will be shown that Plaintiffs were caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct; and Plaintiffs will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future. Plaintiffs seek damages for medical expense, past, present, and future; emotional distress, past, present, and future; lost wages, past, present, and future; pain and suffering, past, present and future; permanent physical impairment, and other such injuries as Plaintiffs may show at trial.

71.     At all times relevant hereto, the drug company Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this produce. These Defendants' conduct exhibits such an entire want of care as to establish that their actions were a results of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiffs' rights. The Plaintiffs are separately and singularly entitled to punitive damages from the corporate Defendants.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiffs recover

-15-

M00E146084

damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rate, and that Plaintiffs have such other and further relief, both general and special, to which they may be justly entitled under the facts and attending circumstances.

Respectfully submitted,

AMOS PORTER, FLORA SUMRALL, AND ANNIE LAURIE VARNADO, PLAINTIFFS

BY _____

Attorneys for Plaintiffs

SHANNON LAW FIRM, PLLC
James D. Shannon, MSB# 6731
Elise B. Munn, MSB# 9654
100 West Gallatin Street
Hazlehurst, Mississippi 39083
Telephone: 601-894-2202
Facsimile: 601-894-5033

-16-

M00E146085

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

SOUTHERN DISTICT OF MISSISSIPPI
FILED

JUN 17 2003

J.T. NOBLIN, CLERK
BY_____ DEPUTY

ANNIE PORTER, FLORA SUMRALL,
AND ANNIE LAURIE VARNADO                                          PLAINTIFFS

VS.                                        CIVIL ACTION NO. 4:03CV12LN

MERCK & CO., INC.; G.D. SEARLE
AND CO., A SUBSIDIARY OF PHARMACIA,
INC., A FOREIGN CORPORATION;
MONSANTO COMPANY; PFIZER, INC.;
JOHN DOE #1, M.D.; JOHN DOE #2,
M.D., JOHN DOE #3, M.D., AND JOHN
DOE #4 M.D., ALL MISSISSIPPI
PHYSICIANS WHOSE TRUE NAMES AND
IDENTITIES ARE PRESENTLY UNKNOWN
OR UNCONFIRMED BUT WILL BE
SUBSTITUTED BY AMENDMENT                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiffs
Amos Porter, Flora Sumrall and Annie Laurie Varnado to remand and
motion for leave to amend the complaint.  Defendants G.D. Searle
LLC, Pharmacia Corporation, Monsanto Company (now known as
Pharmacia Corporation) and Pfizer, Inc. have responded in
opposition to the motion and the court, having considered the
memoranda of authorities submitted by the parties, concludes that
both the motion to amend and the motion to remand should be
denied.

Plaintiffs, through counsel, filed this lawsuit in the
Circuit Court of Jasper County on December 31, 2002, seeking to
recover damages for injuries allegedly sustained as a result of
their having taken one or both of the prescription pain relief

M00E146096

drugs Celebrex and Vioxx. Plaintiffs, all Mississippi residents, named as defendants five non-resident pharmaceutical manufacturers, and also included four "John Doe" defendants, all of whom were alleged to be "Mississippi physicians whose true names and identities are presently unknown or unconfirmed." On January 10, 2003, the manufacturer defendants, who had not yet been served with process, removed the case to this court on the basis of diversity jurisdiction. In their motion to remand, filed promptly following removal, plaintiffs contend that defendants' pre-service removal constitutes a defect in the removal procedure which necessitates remand. Plaintiffs further urge that in the event the case is not remanded on that basis, they should be allowed to amend their complaint to identify those "Mississippi physicians" who were initially identified only as "John Doe" defendants, as a consequence of which complete diversity will be lacking, and remand thus required pursuant to 28 U.S.C. § 1447(e).

There is no question but that there is now (and that there was at the time of removal) jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds the $75,000 threshold for jurisdiction under the diversity statute (a point which plaintiffs do not dispute); and although plaintiffs, themselves Mississippi residents, named John Doe defendants whom they represented were also Mississippi residents, the law is clear that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether there is complete diversity for removal purposes. 28

2

M00E146087

U.S.C. § 1441(a). The remaining defendants named by plaintiffs in the complaint are all citizens of states other than Mississippi, and consequently there is complete diversity of citizenship between the parties.

Moreover, while plaintiffs contend that under the Supreme Court's decision in Murphy Brothers v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999), defendants could not properly remove the case until they were formally served with process and that defendants' pre-service removal was therefore defective, neither this court, nor any court identified by plaintiff or of which this court is aware, has interpreted Murphy Brothers as precluding removal by a defendant prior to formal service of process. The Court in Murphy Brothers held only that a defendant is not obligated to take action in a case until after it has been properly served with process;[1] it did not hold that a defendant must await service to take action. See Mauldin v. Blackhawk Area Credit Union, No. 01 C 50221, 2002 WL 23830, *1 (N.D. Ill. January 2002)(holding that since the defendant was not properly served with process, "the thirty-day removal technically never really began," and therefore, "(the

---

[1]    In Murphy Brothers, the Supreme Court, applying the "bedrock principle" that "[a]n individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process," concluded that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." Id. at 347-46.

3

M00E14600B

defendant's] notice of removal was timely"). Defendants' removal was therefore both substantively and procedurally proper. The question then becomes whether plaintiffs should now be permitted to amend their complaint, post-removal, to include as defendants those physicians who were identified as John Doe defendants in their original complaint. For the reasons that follow, the court is of the opinion that in this case, plaintiffs' request to amend should be denied.

28 U.S.C. § 1447(e) states:

(e) If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

While the statute, by its terms, refers only to post-removal efforts by plaintiffs to "join additional defendants," the Fifth Circuit has recognized that § 1447(e) applies, as well, to the identification of fictitious defendants after removal. See Doleac ex rel. Doleac v. Michalson, 264 F.3d 470, 475 (5th Cir. 2001).

In Henscens v. Deere & Company, 833 F.2d 1179 (5th Cir. 1987), the Fifth Circuit addressed the standard applicable to where a plaintiff seeks to amend to add a non-diverse defendant following removal of an action on the basis of diversity jurisdiction. The court held that in such cases, the district court "should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other

4

M00E146009

factors bearing on the equities." Id. at 1182. Although this case differs somewhat from the typical § 1447(e) case in that the non-diverse defendants proposed to be identified by the amendment were fictitiously named in the original complaint, that circumstance does not render the Hensgens analysis inappropriate since "the equitable nature of the Hensgens analysis allows the court to consider not only the plaintiff's motive, but other equitable factors," as well. Lacy v. ABC Ins. Co., No. Civ. A. 95-3122, 1995 WL 688786, *2 (E.D. La. Nov. 17, 1995) (such factors might include "the strength of plaintiff's case against the non-diverse defendants and the diverse defendant's ability to anticipate the citizenship of the fictitiously named defendant(s) at the time of removal").

Turning, then, to the Hensgens factors, in the case at bar, it may be somewhat difficult to characterize as truly "dilatory" plaintiffs' request to amend since plaintiffs did indicate in their original complaint that they were desirous of suing the physicians who prescribed Vioxx and/or Celebrex to them. On the other hand, there can be no doubt that plaintiffs themselves knew - they must have known - the identity of their own prescribing physicians at the time the complaint was filed; and yet their attorneys, rather than take the time to ascertain this information from their clients, resorted to the expedient of suing the doctors as fictitious parties. Apparently, this was done in counsels' haste to get the complaint filed before Mississippi's recently enacted medical malpractice tort reform law took effect on January

5

M00E146090

1, 2003.[2]  The simple fact is, plaintiffs' counsel could easily have known and confirmed the identity of the John Doe defendants before filing this suit, and yet did not seek to learn the identity of the John Doe defendants, or any of them, until after the case was removed.[3]  Given that the identity of these defendants could have been known before suit was filed, it can fairly be said that the post-removal attempt to join them as defendants is "dilatory."

That brings the court to the question of plaintiffs' purpose, or motivation, in suing, or attempting to sue, these doctors.  It is perhaps true in the usual case that the fact that a plaintiff has included a defendant as a fictitious defendant in his state court pleading would tend to belie an inference that the plaintiff's motivation for seeking to amend post-removal to substitute a real party for the one previously identified only as a fictitious party is to defeat diversity jurisdiction.  <u>See Gilberg v. Stepan Co.</u>, 24 F. Supp. 2d 355, 356 (E.D. La. 1998) (fact that the plaintiff was unable to effect the substitution before the defendant removed "does not somehow convert any subsequent effort at substitution into a joinder for the sole

---

[2]  As defendants note, this new legislation, which took effect the day after plaintiffs' complaint was filed, placed significant restrictions on filing lawsuits against physicians.

[3]  Perhaps they had intended to do this prior to serving the diverse defendants, working under the mistaken impression that the case would not be removable until at least one of the diverse defendants was served, and were foiled in their efforts when the diverse defendants filed their notice of removal prior to service of process.

6

M00EI46091

purpose of destroying diversity'"); <u>Davis v. American Commercial</u>
<u>Barge Line Co.</u>, No. Civ. A. 98-537, 1998 WL 341840, at *2 (E.D.
La. June 25, 1998) (substitution of real party for fictitious
party named prior to removal indicates purpose of joinder is not
solely to destroy diversity). Here, however, the court is
persuaded that plaintiffs' motivation, not just for undertaking to
now substitute these doctors as the real party defendants, but for
having undertaken to sue them in the first place, was to avoid
federal jurisdiction.

Plaintiffs' complaint contains eleven counts, ten of which
are directed against the manufacturer defendants, and assert
products liability based claims, and fraudulent and negligent
misrepresentation by those defendants as to the safety and
efficacy of the products at issue. A major theme of these counts
– in fact, the major theme – is that the manufacturer defendants
knew of the dangers posed by these drugs all along, and yet they
withheld this information and intentionally marketed them, "both
directly to the consuming public and indirectly to physicians
through drugs sales representatives," as safe and effective, and
at all times, before, during and after marketing the products,
failed to provide adequate warnings or instructions of the
defective nature of the products. The complaint alleges
throughout that in addition to their marketing to the consuming
public, the manufacturer defendants' sales representatives, who
marketed the products to doctors, made fraudulent
misrepresentations concerning the safety and efficacy of these

M00E146092

products.  As to the doctors themselves, plaintiffs' complaint contains one count charging medical negligence in which plaintiffs bluntly allege that these physicians prescribed these drugs to plaintiffs, that they "knew, or should have known, of the dangerous side effects of these medications," and that their prescribing these medications "presents a deviation from the standard of care generally exercised by physicians. . . ."

Although the court is aware of the propriety of pleading in the alternative, here, given plaintiffs' explicit, repeated and consistent charge that the manufacturer defendants concealed and misrepresented information about the subject drugs to physicians, plaintiffs' entirely conclusory allegation that the doctors "knew, or should have known, of dangerous side effects of these medications," without any indication of a factual basis for such an allegation, strongly suggests to the court that plaintiffs have sued the physicians only as a means of avoiding federal court. Cf. Louis v. Wyeth-Ayerst Pharmaceuticals, Inc., Civil Action No. 5:00CVG102LN (S.D. Miss. Sept. 25, 2000) (notwithstanding the plaintiffs' general references to knowledge possessed by "defendants," the complaints, which alleged that the manufacturers undertook to deceive everyone, including the pharmacist defendants, about the safety of their drugs, could not "reasonably and legitimately be construed as alleging any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or reason to know of any of the dangers associated with the product(s) of which plaintiffs contend they were unaware");

8

M00E146093

Brown v. Bristol-Myers Squibb Co., Civil Action No. 4:02CV301LN

(S.D. Miss. Dec. 2, 2002) (same).

While the proposed amended complaint does not disclose any legitimate basis for suing these defendants, if it were to turn out that plaintiffs, in fact, do have some basis for suing them, there is nothing to prevent them from bringing a separate action against them in state court, and in the court's opinion, plaintiffs will not be prejudiced if required to proceed against the doctors separately.[4]  The court herein holds only that plaintiffs may not sue them in this action.

For the foregoing reasons, it is ordered that plaintiffs' motion to remand and to amend is denied.

SO ORDERED this 17th day of June, 2003.

_____
UNITED STATES DISTRICT JUDGE

---

[4]    Of course, if required to proceed separately against the doctor defendants, plaintiffs would no doubt find their claims subject to the newly enacted medical malpractice tort reform law; but their efforts to avoid that law in the manner they chose was of questionable legitimacy to begin with.  Had they a genuinely cognizable claim against the doctors, they could and should have made every reasonable effort to properly name them at the outset, and could and should have pled a proper claim against them.  They did neither.

9

M00E146094

## Exhibit 3

LEO

M00E146095

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

FILED
02 MAY -8 PH 3: 27
02CH09935

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all other persons similarly situated<br>Plaintiffs.<br><br>vs.<br><br>MERCK & CO., INC.<br>Defendant | ) Civil Action No.<br>)<br>) Amount Claimed: An amount necessary to<br>) satisfy the jurisdictional requirements of this<br>) court<br>)<br>) Plaintiffs demand a jury trial<br>) |

## CLASS ACTION COMPLAINT

NOW COMES Plaintiff Scott Zeedyk, on behalf of himself and all other persons similarly situated, by and through his attorney. John Xydakis, and Complains of Defendant Merck & Co., Inc. ("Merck"), as follows:

### A. PARTIES AND VENUE

1. Plaintiff, by his attorney, brings this Class Action Complaint on his own behalf and on behalf of all others similarly situated to, *inter alia*, obtain compensatory damages, refunds, disgorgement and the establishment of a medical monitoring program for diagnosis and treatment of the potentially life threatening side effects and diseases caused by the taking of the drug marketed under the brand name "Vioxx" by Defendant Merck.

2. Plaintiff is a resident and citizen of Stickney, Cook County, Illinois. Plaintiff was prescribed and consumed Vioxx during the relevant time period for acute pain management. Plaintiff was unaware of the serious risks associated with the taking of Vioxx.

3. Defendant Merck is a New Jersey corporation having its principal place of business in New York. New York.

4. The court has jurisdiction over the Defendant and the matters herein pursuant to 735 ILCS 5/2-209 as Defendant Merck transacts business within the State Of Illinois on a

M00E146096

regular and continuous basis and has made and performed contracts by the sale of Vioxx
and other pharmaceutical products within the State of Illinois.

## B. CLASS OF PERSONS

5.   Plaintiff brings this litigation as a class action pursuant to 735 ILCS 5/2-801 to certify a
Plaintiff class. Plaintiff brings this action on his own behalf and on behalf of the
following Class: all persons in the United States, including their successors in interest,
who have ingested Vioxx for approved uses and in approved doses and for unapproved
uses and unapproved doses.

6.   Excluded from the Class are Defendant and its officers and directors.

7.   Numerosity: The Class is so numerous that joinder of all members is impracticable.
Thousands of persons, throughout the United States, were and/or are prescribed Vioxx.

8.   Typicality: The claims of the representative Plaintiff are typical of the claims of each
member of the Class. Plaintiff and all other members of the Class have used and/or
continue to use Vioxx. Plaintiff has no interests antagonistic to the claims of the Class.

9.   Adequacy of representation: Plaintiff will fairly and adequately protect and pursue the
interests of the members of the Class. Plaintiff understands the nature of the claims
herein and his role in these proceedings, and will vigorously represent the interests of the
Class. Plaintiff's counsel has experience in consumer class cases and is qualified to
pursue this litigation for the Class.

10.  The class action is maintainable: This action is appropriate for class status because:

   (a)   the prosecution of separate actions by or against individual members of the Class
         would create risk of inconsistent or varying adjudications with respect to
         individual members of the Class which would establish incompatible standards of
         conduct for Defendant:

   (b)   Defendant has acted or refused to act on grounds generally applicable to the Class,
         thereby making appropriate final injunctive relief or corresponding declaratory
         relief with respect to the Class as a whole; and

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY   2

MODE146097

(c)     questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. This class litigation is an appropriate method for the fair and efficient adjudication of the claims involved. The size of the expected recovery for an individual Class member is not expected to be substantial enough for any one Class member to incur the costs and expenses of this litigation. There are no foreseeable difficulties likely to be encountered in the management of a class action.

11.   Commonality: There are issues of fact and law common to the Class, and these questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to, the following:

(a)     whether Defendant has failed to adequately warn of the serious cardiovascular risks and other serious risks associated with the ingestion of Vioxx;

(b)     whether an emergency notice and revised patient insert warning of the hazards associated with Vioxx should be disseminated to Class members;

(c)     whether the Defendant negligently designed, manufactured, warned, marketed and advertised Vioxx;

(d)     whether Defendant adequately and appropriately tested Vioxx;

(e)     whether patients who have taken Vioxx are entitled to monetary relief;

(f)     whether the omissions, misrepresentations or false statements were made intentionally, willfully, wantonly, recklessly, or negligently;

(g)     whether Defendant owed a duty to the Class members, what is the scope of any duty, and was the duty breached;

(h)     whether the Class members have been damaged and, if so, what is the proper measure of damages;

(i)     whether Vioxx causes injury to its users;

(j)     whether Merck is strictly liable for sales and distribution of a dangerously defective product;

DOROTHY BROWN - CLERK OF THE CIRCUIT COURT OF COOK COUNTY    3

M00E146098

(k)    whether Merck negligently designed, manufactured, warned about, distributed and marketed Vioxx; and

(l)    whether the serious side effects, injuries and damages from the use of Vioxx support the need for medical monitoring of persons who have used the drug.

## C. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

12.    At all relevant times hereto, Defendant Merck did or caused Vioxx to be manufactured, designed, tested, packaged, supplied, marketed, advertised and sold in the United States.

13.    Vioxx is a non-steroidal anti-inflammatory drug ("NSAID") with a COX-2 inhibitor, which was approved on May 20, 1999, for the treatment of primary dysmenorrhea (menstrual cramps), for acute pain management in adults and for relief of osteoarthritis. Vioxx reportedly reduces pain and inflammation while also significantly reducing incidents of stomach ulcers commonly associated with pain relievers such as aspirin and ibuprofen.

14.    Traditional NSAIDs such as ibuprofen and aspirin block both COX-2 and COX-1 enzymes. Because the COX-1 enzyme protects the lining of the stomach, blocking it can lead to stomach irritation. It is believed that COX-2 inhibitors reduce the incidence of stomach ulcers and bleeding because they do not block COX-1 enzymes.

15.    There are over 86 million users of Vioxx nationwide. Annual sales exceed $2.5 billion for Vioxx in the United States.

16.    The Vioxx Gastrointestinal Outcome Research Study (hereinafter "VIGOR"), sponsored by Merck, was designed to gather information regarding "clinically meaningful upper gastrointestinal ("GI") events and to develop a large controlled database for overall safety assessment."

17.    The VIGOR study included about 8000 patients, 4000 for the Vioxx 50 mg a day treatment group and 4000 for the naproxen 1000 mg a day treatment group, for a median time period of nine months. (Naproxen is an NSAID, sold under such brand names as Naprosyn and Aleve). The study compared the safety of the two patient groups. The results of the study concerning GI events demonstrated that the group on Vioxx has a

M00E146099

significantly lower incidence of GI events, 2.08% compared to Naproxen 4.49%. (GI events include perforations, symptomatic ulcers, and gastrointestinal bleeds).

18. The VIGOR study also found that serious cardiovascular events occurred in 101 patients (2.5%) in the Vioxx group compared to 46 (1.1%) in the Naproxen group. In addition, myocardial infarctions (heart attacks) occurred in 20 patients in the Vioxx group (0.5%) compared to 4 patients in the Naproxen group (0.1%).

19. According to the Department of Health and Human Services ("HHS"), Defendant Merck engaged in a campaign that minimized the serious cardiovascular findings observed in the VIGOR study. The VIGOR study observed patients on Vioxx with a four to five times increase in myocardial infarctions, compared to patients on the NSAID - Naprosyn (naproxen).

20. HHS also cited Defendant Merck for engaging in a promotional campaign that minimized the Vioxx/Coumadin (warfarin) drug interaction, (warfarin is an anticoagulant and the mixing of Vioxx and Coumadin can lead to the potentially serious risk of bleeding), making unsubstantiated superiority claims against other NSAIDs, and promoting Vioxx for unapproved uses and dosing regimens. HHS found Defendant Merck's misrepresentations particularly troubling because of HHS's previous objections to Defendant Merck's misrepresentations.

21. According to HHS, Merck's press release of May 20, 2001 entitled "Merck Confirms Favorable Cardiovascular Safety Profile of Vioxx," which stated that Vioxx has a "favorable cardiovascular profile" was "simply incomprehensible, given the rate of GI and serious cardiovascular events compared to Naproxen." HHS concluded that Defendant Merck minimized the potentially serious cardiovascular findings of the VIGOR study and minimized the Vioxx/Coumadin drug interaction.

22. After carefully reviewing the results of the VIGOR study, the U.S. Food and Drug Administration ("FDA") agreed with the Arthritis Advisory Committee recommendations of February 8, 2001 that the label for Vioxx should include the gastrointestinal and cardiovascular information. Hence, on April 11, 2002, the FDA approved new indication and label changes for Vioxx which included this information.

DOROTHY BROWN = CLERK OF THE CIRCUIT COURT OF COOK COUNTY    5

M00E146100

## D. CAUSES OF ACTION

### COUNT 1 - (Strict Products Liability)

23.    Plaintiff alleges and incorporates paragraphs 1 through 22 as if set forth fully above.

24.    Defendant Merck is the manufacturer and/or supplier of Vioxx.

25.    Defendant Merck manufactured and/or supplied Vioxx, which was defective and hazardous in design and formulation in that, when left in the hands of Merck, the foreseeable risks exceeded the benefits associated with the design or formulation.

26.    Alternatively, Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous in design or formulation, in that, when it left the hands of Merck, it was unreasonably dangerous, more dangerous that an ordinary consumer would expect and more dangerous than other forms of NSAIDs.

27.    The Defendant Merck manufactured and/or supplied Vioxx, which was defective or hazardous due to inadequate warning or instruction because Merck knew or should have known that Vioxx posed a greater risk to patients taking it than to those patients taking other NSAIDs.

28.    As the procuring cause and legal result of the defective and hazardous condition of Vioxx as manufactured and/or supplied by Defendant Merck, and as a direct and legal result thereof, Plaintiff and other Class members require reasonable and necessary health care, attention and services and did incur medical, health, incidental and related expenses and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

29.    Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce. Such tests would have demonstrated that when compared to other NSAIDs, patients taking Vioxx had increased risk of cardiovascular events and adverse drug interactions with Coumadin.

30.    Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction. Defendant Merck knew or should

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY    6

M00E146101

have known that Vioxx increased the risk of cardiovascular events and adverse drug interactions with Coumadin. when compared to other NSAIDs.

31.    As the producing cause and legal result of the defective or hazardous condition of Vioxx. as manufactured and supplied by the Defendant Merck. and as a direct and legal result thereof. Plaintiff and other Class members require reasonable and necessary health care. attention and services and did incur medical, health, incidental and related expenses. and require updated warnings and emergency notice.  Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT II – (Strict Products Liability - Failure to Warn)

32.    Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

33.    Defendant Merck is the manufacturer and/or supplier of Vioxx.

34.    Defendant Merck failed to adequately and fully warn of the higher risk of cardiovascular events. of Vioxx/Coumadin interaction, and of unapproved use, when compared to other NSAIDs.

35.    Defendant Merck failed to adequately test Vioxx before its introduction into interstate commerce.  Such test would have demonstrated that patients taking Vioxx had increased risk of cardiovascular event and adverse drug interaction with Coumadin. when compared to other NSAIDs.

36.    Defendant Merck supplied and/or distributed Vioxx, which was defective due to inadequate post-marketing warning or instruction.  Defendant Merck knew or should have known that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin. when compared to other NSAIDs.

37.    As the producing cause and legal result of the defective or hazardous condition of Vioxx. as manufactured and supplied by the Defendant Merck, and as a direct and legal result thereof. Plaintiff and other Class members require reasonable and necessary health care. attention and services. and did incur medical, health, incidental and related expenses.

DOROTHY BROWN—CLERK OF THE CIRCUIT COURT OF COOK COUNTY    7

M00E146102

and require updated warnings and emergency notice. Absent such equitable relief, Plaintiff and other members of the Class will suffer irreparable injury for which there is no adequate remedy at law.

## COUNT III - (Negligence)

38. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

39. Defendant Merck has had a duty to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx, including a duty to ensure that Vioxx did not cause users to suffer from unreasonable and dangerous side effects.

40. Defendant Merck breached its duty to Plaintiff and members of the Class, to exercise reasonable care in the manufacture, sale, distribution, marketing and warning of Vioxx in that Defendant Merck knew or should have known that Vioxx created an unreasonably high risk of dangerous side effects, including an unreasonably high risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

41. Defendant Merck was negligent in the manufacture, sale, testing, distribution, marketing and warning of Vioxx in that it:

    (a) failed to issue reasonable and proper warnings regarding all possible adverse effects associated with the use of Vioxx;

    (b) failed to conduct adequate pre-clinical testing, clinical testing and post-marketing oversight and surveillance to determine the effect of Vioxx;

    (c) failed to provide adequate instruction to health care providers for appropriate risks and uses of Vioxx;

    (d) failed to warn Plaintiff and the Class, prior to encouraging the use of Vioxx, that Vioxx increased the risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs;

    (e) failed to use reasonable care in the design and manufacturing of Vioxx to avoid and prevent the increased risk of cardiovascular events and adverse drug

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY     8

M00E146103

interaction with Coumadin, when compared to other NSAIDs; and

(f) was otherwise careless or negligent.

42. Defendant Merck knew or should have known that Plaintiff and the Class would foreseeably suffer injury as a result of Defendant Merck's failure to exercise ordinary care as set forth above.

43. As the proximate cause of Defendant Merck's negligence, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other forms of economic loss.


## COUNT IV - (Breach of Express Warranty)

44. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

45. Defendant Merck expressly warranted that Vioxx was safe for use by Plaintiff and the Class for the treatment of conditions for which Vioxx was advertised.

46. Vioxx does not conform to Defendant Merck's express representations because Vioxx does not warn of increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

47. As a direct and proximate result of Defendant Merck's breach of express warranty, Plaintiff and the Class have suffered economic loss in an amount to be proven at trial.


## COUNT V - (Breach of Implied Warranty)

48. Plaintiff realleges and incorporates paragraphs 1 through 22 as if set forth fully above.

49. At the time Defendant Merck manufactured, sold, distributed, and marketed Vioxx, Defendant Merck knew of the use for which Vioxx was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

50. Plaintiff and the Class and their health care providers reasonably relied upon the skill and judgment of Defendant Merck as to whether Vioxx was of merchantable quality.

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY    9

safe and fit for its intended use.

51.  However, despite this implied warranty, Vioxx was not of merchantable quality, safe or fit for its intended use because Vioxx was and is unreasonably dangerous and unfit for the ordinary purposes for which it was intended and used.

52.  As a direct and proximate result of Defendant Merck's breach of implied warranty of merchantability, Plaintiff and the Class require reasonable and necessary health care and services, and did or will incur medical, health, incidental expenses, and other economic loss.

### COUNT VI - (Medical Monitoring)

53.  Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

54.  As a direct and proximate result of Defendant Merck's conduct as set forth herein, Plaintiff and members of the Class have been exposed to an unreasonably increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs.

55.  The increased risk of cardiovascular events and adverse drug interaction with Coumadin, when compared to other NSAIDs, can only be mitigated or addressed by the creation of a comprehensive medical monitoring program that:

    (a) notifies individuals who used Vioxx of the potential harm from Vioxx;

    (b) funds further studies of the long-term effects of Vioxx use;

    (c) funds research into possible cures for the detrimental effects of Vioxx use;

    (d) gathers and forwards to treating health care providers information related to the diagnosis and treatment of injuries and diseases that may result from using Vioxx; and

    (e) aids in the early diagnosis and treatment of resulting injuries and diseases through ongoing testing and monitoring of Vioxx users.

56.  Plaintiff and members of the Class have no adequate remedy at law in that monetary damages alone cannot adequately compensate for the continuing nature of the harm to them, and a monitoring program that notifies them of possible injury and aids in their

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY  10

M00E146105

diagnosis and treatment can prevent the greater harms that may not occur immediately and which may be preventable if proper research is conducted and the health risks are diagnosed and treated before they occur and worsen.

57.   Without a court approved and supervised medical monitoring program, Vioxx users will not receive prompt medical care.

## COUNT VII - (Consumer Fraud)

58.   Plaintiff realleges and incorporates paragraphs 1 through 22 as if fully set forth above.

59.   At all times relevant hereto and to date there was in force a statute in the State of Illinois 815 ILCS 505 *et seq.*, commonly known as the "Consumer Fraud and Deceptive Practices Act ("Act")," the scope of which covers all of the relevant acts, conduct, practices and transactions noted above and herein.

60.   The Plaintiff and members of the Class are consumers, as defined by the Act, of Defendant Merck's product, Vioxx.

61.   The acts, practices and conduct of Defendant Merck involved trade practices addressed to the market generally and/or otherwise implicate consumer protection concerns.

62.   By one or more of the following acts, practices and conduct noted above in Paragraphs 12-22, directly or by implication, Defendant Merck violated said Act and damaged the Plaintiffs and members of the Class by engaging in unfair and/or deceptive acts or practices, and/or engaging in conduct which creates a likelihood of confusion or misunderstanding, in the conduct of their trade or commerce.

63.   That Defendant Merck intended that the Plaintiff and members of the Class rely on its above-mentioned unfair and/or deceptive acts, practices and conduct.

64.   That Defendant Merck's acts, practices and conduct were done knowingly, intentionally, willfully, recklessly, with actual malice, and with a wanton disregard of the rights of the Plaintiff and members of the Class, an especially vulnerable group who are suffering from medical ailments and who are not as educated about pharmaceutical drugs as the Defendant Merck is, and as such the Plaintiff and members of the Class are entitled to

M00E146106

punitive, or exemplary, damages.

65.   As a result of said unfair and/or deceptive acts, practices and conduct by Defendant Merck, and the Plaintiff's and members of the Class' justifiable and reasonable reliance thereupon, the Plaintiff and members of the Class have been damaged.

66.   Should they prevail, the Plaintiff and members of the Class are entitled to reasonable attorney's fees and costs from Defendant Merck in an amount necessary to compensate the Plaintiff and members of the Class for the costs and disbursements of this action pursuant to 815 ILCS 505 *et seq.*.

## E. PRAYER FOR RELIEF

WHEREFORE, for each and/or any of the above-mentioned Counts, Plaintiff prays for the following relief:

A.   an order certifying the Class as set forth herein, with the named Plaintiff as class representative and his counsel as class counsel;

B.   a declaration that Defendant Merck's conduct violated the law as alleged in each cause of action;

C.   a judgment for Plaintiff and the Class for compensatory damages sustained as a result of Defendant Merck's unlawful conduct, including medical, hospital and incidental expenses according to proof;

D.   an order creating a comprehensive court supervised medical monitoring program as described herein which will notify users of Vioxx of the increased risks of cardiovascular event and adverse drug interaction with Coumadin, when compared to other NSAIDs, the costs of which are to be borne by Defendant Merck;

E.   an order creating a court-supervised trust fund, funded by Defendant Merck, to pay for a medical monitoring program, including testing, screening and monitoring of potential adverse and harmful effects caused by the consumption of Vioxx;

F.   an order requiring Defendant Merck to provide Plaintiff and the Class, and health

M00E146107

care providers with revised drug warnings, in substantially the same form and same delivery method as the original warnings were issued;

G.  an order requiring Defendant Merck to refund and make restitution of all monies obtained from the sale of Vioxx to the Plaintiff and the Class;

H.  an order awarding Plaintiff and the Class attorneys' fees, costs and expenses against Defendant Merck as allowed by law;

I.  an order against Defendant Merck awarding Plaintiff and the Class an amount necessary to compensate the Plaintiff and the Class for the costs and disbursements of this action, including reasonable attorney's fees, pursuant to 815 ILCS 505 *et seq*;

J.  pursuant to 815 ILCS 505 *et seq.*, an order against Defendant Merck awarding Plaintiff and the Class punitive, or exemplary, money damages found to be suitable and sufficient to deter similar acts by Defendant Merck in the future and to punish Defendant Merck for its previous acts; and

K.  such other or further relief as the Court may hold appropriate.


Respectfully submitted.
SCOTT ZEEDYK on behalf of himself
and all other persons similarly situated


BY: _____
        John Xydakis, Attorney for Plaintiffs


John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

M00E146108

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| SCOTT ZEEDYK on behalf of himself and all ) other persons similarly situated | Civil Action No. |
| Plaintiffs, ) | |
| vs. ) | Amount Claimed: An amount necessary to satisfy the jurisdictional requirements of this court |
| MERCK & CO., INC. ) | |
| Defendant. ) | Plaintiffs demand a jury trial |

## AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222(B)

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth below are true and correct, except as to matters therein stated to be on information and belief and as to such matter the undersigned certifies as aforesaid that he verily believes the same to be true.

1. The total money damages sought in the above-captioned case exceeds fifty thousand dollars ($50,000).

FURTHER AFFIANT SAYETH NAUGHT.

John Xydakis
Atty No. 36859
Suite 201
125 W. 55th St.
Clarendon Hills, IL 60514
(630) 215-5515

DOROTHY BROWN – CLERK OF THE CIRCUIT COURT OF COOK COUNTY  14

M00E146109

Minute Order Form. (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4203 | **DATE** | 8/30/2002 |
| **CASE TITLE** | Scott Zeedyk, on behalf of himself and all other persons similarly situated vs. Merck & Co., Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiff's Motion to Remand back to Circuit Court of Cook County for lack of jurisdiction pursuant to 28 U.S.C. § 1447(c)

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due _____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at ___ ___.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on ___ ___ set for ___ ___ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on ___ ___ set for ___ at _____.

(7)  ☐  Trial[set for/re-set for] on ___ at ___ .

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at ___ .

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]    For the reasons set forth on the reverse side of this minute order, Zeedyk's motion to remand for lack of subject matter jurisdiction is DENIED [7(1)]

(11)  ■  [For further detail see order on the reverse side of the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | SEP 03 2002 | |
| | Notified counsel by telephone. | | | date docketed | 10 |
| X | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | | | |
| klb (lc) | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

MODE146110

[Received for use by the Court]

# ORDER

Before this Court is the motion of plaintiff, Scott Zeedyk, to strike or deny defendant's notice of removal. Plaintiff is a citizen of Illinois. Defendant, Merck, is a citizen of New Jersey. This case involves failure to warn claims and allegations that VIOXX, a prescription medicine manufactured by Merck, caused plaintiff, Zeedyk, to sustain life-threatening injuries.

On May 8, 2002, plaintiff filed his original complaint against the defendant in the Circuit Court of Cook County. On May 20, 2002, the defendant was served with service of process. On this date as well, plaintiff was granted leave of court by the Circuit Court to file an amended complaint instanter. On May 29, 2002, this amended complaint was served on the defendant. Pursuant to 28 U.S.C. § 1332, the defendant filed its first notice of removal, on June 12, 2002, based on its receipt of the original complaint, and on its subsequent receipt of the amended complaint, filed an amended notice of removal on June 25, 2002.

Plaintiff moves to remand because it alleges that Merck failed to conform to Local Rule 81.2. This rule requires that the notice of removal be accompanied by a statement of good faith that the jurisdictional limit is met and by either a response by plaintiff to a request to admit or a response to an interrogatory stating that the jurisdictional limit is met or proof of the failure to respond to such a request to admit or interrogatory. Merck did not provide any such responses with its notice of removal. Defendant argues that where, as here, the complaint clearly establishes that the amount in controversy is in excess of the jurisdictional minimum, the defendant need not establish satisfaction of the jurisdictional minimum through the procedure outlined in Local Rule 81.2.

This Court has previously explained that Local Rule 81.2 is "not the exclusive way in which the jurisdiction amount could be established in a case removed from an Illinois court." Murphy v. Avon Products, Inc., No. 02-C-146, 2002 WL 808386 (N.D. Ill. April 30, 2002); Huntsman v. Whitehouse, No. 97-C-3842, 1997 WL 548043 (N.D. Ill. Sept. 2, 1997). Zeedyk seeks, inter alia, compensatory and punitive damages for Merck's alleged knowing, intentional, willful, reckless, and malicious failure to warn. Plaintiffs seeking similar relief against other pharmaceutical manufacturer defendants and making similar allegations of failure to warn received jury awards well in excess of $75,000. See, e.g., Proctor v. Upjohn, 291 Ill.App.3d 265, 286-87 (Ill. App. 1997) (plaintiff received approximately $3 million in compensatory damages and $6 million in punitive damages for failure to warn claim); Batteast v. Wyeth Labs, Inc., 172 Ill. App.3d 114 (Ill. App. 1988) (upholding jury's award of approximately $9 million in compensatory damages and $13 million in punitive damages). Plaintiff attempted to defeat jurisdiction in this court by specifically pleading in the amended complaint that he was waiving his right to damages in excess of $75,000. However, this is impermissible under Illinois pleading rules, which forbid a plaintiff in a personal injury action from pleading in its complaint any amount of damages other than "the minimum necessary to comply with the circuit rules of assignment where the claim is filed." 735 Ill. Comp. Stat. Ann. § 5/2-604 (West 2002); In re Shell Oil Co., 970 F.2d 355, 356 (7th Cir. 1992). Thus, it is reasonably probable that the amount in controversy exceeds $75,000 where similar claims recovered damages well over that amount.

For the foregoing reasons, plaintiff's motion to remand for lack of subject matter jurisdiction is DENIED.

_[signature]_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

LAWRENCE GOODMAN,               :      **Index No.:** 07/105250

                 Plaintiff,   :

          -against-         :      <u>**AFFIDAVIT OF SERVICE**</u>

                              :

MERCK & CO., INC.,             :

                Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - x

SARAH A. BINDER declares:

I am over the age of 18 years and not a party to this action, I am associated with the firm of Hughes Hubbard & Reed, counsel for Defendant, and on May 1, 2007, I served a true and accurate copy of the Notice of Filing of the Notice of Removal via first-class mail, postage prepaid, on plaintiff's counsel, William Hamel, Esq., Dinkes & Schwitzer, Esq., 112 Madison Avenue, New York, New York 10016.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Sarah A. Binder

Sworn to before me this
_i_<sup>st</sup> day of May, 2007

_____
Notary Public

PATRICIA E. SMITH
Notary Public, State of New York
No. 1SM4796951
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 30, 20__

M00E14E045

COUNTY CLERK'S INDEX
No. 07/105250

# Supreme Court

COUNTY OF NEW YORK

LAWRENCE GOODMAN,

Plaintiff,

-against-

MERCK & CO., INC.,

Defendant.

**COPY**

NOTICE OF FILING OF
NOTICE OF REMOVAL

## Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212 837-6000

Attorneys for Defendants

By: _Vilia B. Hayes_
Vilia B. Hayes

M00E146046